UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT A. MERRITT,

               Plaintiff,                               Case No. 12-12903
                                                         Honorable Thomas L. Ludington

v.

LEXIS NEXIS,

               Defendant.

_____/

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
AND DISMISSING PLAINTIFF'S COMPLAINT**

Plaintiff Scott A. Merritt filed this pro se action on July 2, 2012. That same day he filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), which was granted. Upon review of Plaintiff's objections to Magistrate Judge Binder's recommendation, it is clear that Plaintiff's complaint does not state a claim on which relief may be granted, and the action will be dismissed.

**I**

Construing Plaintiff's complaint most liberally, it is possible that he is alleging a defamation claim against Defendant Lexis Nexis. He writes, "during a prior review of my lexis nexis file, numerous erroneous and extremely damaging falsehoods were found all items were subsequently removed once proven false." Pl.'s Compl. 1, ECF No. 1. "These have subsequently reappeared several times in spite the afore mentioned removal." *Id.* at 2. Apparently Plaintiff's phone number and his address had been listed incorrectly. His name appeared as Scott Merritt instead of Scott A. Merritt. There were inaccurate criminal history records. And his employment address was incorrectly listed as Midland County. Plaintiff asserts

that all of this information had been previously removed "and only [Defendant] is continuing to disseminate these falsehoods." *Id.* Plaintiff claims he has "suffered extremely in terms of lost contracts and related business opportunities" due to the presence of this information. *Id.*

Magistrate Judge Charles E. Binder reviewed Plaintiff's complaint pursuant to § 1915(e)(2)(B), and recognized deficiencies. On October 23, 2012, the magistrate judge issued a report recommending that the complaint be dismissed. Specifically, Magistrate Judge Binder, without any guidance from Plaintiff, construed the complaint as establishing a defamation claim against Defendant. Magistrate Judge Binder felt that the Communications Decency Act (CDA) bars Plaintiff from bringing his suit, as Plaintiff attempts to hold Defendant liable for actions that are "quintessentially related to a publisher's role and Section 230 specifically proscribes liability in such circumstances." Report & Recommendation, 5 (quoting *Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (internal quotation marks omitted)).

Plaintiff objected to the report. Strenuously. He claims that Magistrate Judge Binder has exhibited a "blatant bias" against him, and demands that the magistrate judge not be given "authority on any matters involving [Plaintiff] in this case or any other." Pl.'s Obj. 1, ECF No. 13. He makes clear that any involvement by the magistrate judge will force his hand — that he will "file not only a judicial complaint but begin disbarment proceedings against Charles Binder." *Id.* Plaintiff goes on:

> The grounds for dismissal [Magistrate Judge Binder] states are baseless and addressed in [sic] similarly in several of the other cases he has attempted to interfere with. I will await a written response that the objection has ruled in my favor and that the matter is proceeding to trial. Otherwise I will begin to proceed with disbarment proceedings and judicial complaint immediately. . . . Any further hindrance of any kind to this case or any other and I will not only take the matter to the media for exposure but will enlist the assistance of the department of Justice and will show absolutely no mercy if this harassment continues.

*Id.*

Although the majority of Plaintiff's objection emphasizes his belief that Magistrate Judge Binder has it in for him, he does direct a few sentences towards addressing the recommended dismissal of his complaint. "[T]he matters involved within this case fall under the FCRA 15 USC and multiple sub sections to include but not limited to 616, 617 & 623 among others." *Id*. "The matters involved clearly fall within the federal jurisdiction under the FCRA." *Id*. He alleges Defendant has "continued to present information known to be false and this is a malicious and tortious act. To continue to present this false information is a [sic] to act with willful blindness of the facts to inflect [sic] emotional and financial distress and to serve no other purpose." *Id*. at 1–2. Plaintiff concludes that "[D]efendant has no defense in such known falsehoods and even if they had these are matters for trial without exception." *Id*. at 2.

On December 13, 2012, a hearing was conducted concerning Plaintiff's objection to the magistrate judge's report and recommendation. Plaintiff first addressed his belief that Magistrate Judge Binder harbors extreme bias against him. Plaintiff believes that the magistrate judge was involved on behalf of the Internal Revenue Service in some of his cases in the late 1990's or early 2000's, and that is why the magistrate judge is biased against him. When pressed he could not provide an exact date, but he assured the Court that the magistrate judge was involved in the cases, and that there was a "longstanding history if hatred" between them. Plaintiff acknowledged this is why he wants Magistrate Judge Binder excluded from the proceedings.

Regarding his objection to the report and recommendation itself, Plaintiff argued that his suit was not precluded by the CDA because federal jurisdiction is proper under the Fair Credit Reporting Act (FCRA). Plaintiff indicated that his citation to the FCRA in his objection was referring to this statute. Although Plaintiff was unable to respond to the magistrate judge's

conclusion that the CDA barred his suit, his was adamant that his claims are properly before this Court under the FCRA.

## II

The Supreme Court has recognized that Congress, in enacting the federal *in forma pauperis* statute, " 'intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). At the same time, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton*, 504 U.S. at 31 (quoting *Neitzke v. Wiliams*, 490 U.S. 319, 324 (1989)). Responding to this concern, Congress provided § 1915(e)(2), which establishes that a court "*shall* dismiss the case" if the court finds that:

> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal –
>
>> (i) is frivolous or malicious;
>>
>> (ii) fails to state a claim on which relief may be granted; or
>>
>> (iii) seeks monetary relief against a defendant who is immune from such relief.

Section 1915(e)(2) (emphasis added).

When a plaintiff proceeds without the assistance of counsel, a court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a complaint

must contain more than legal labels, conclusions, and a recitation of the elements of a cause of action, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); it must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III

Plaintiff's objection to Magistrate Judge Binder's involvement with his cases will first be addressed, followed by the sufficiency of Plaintiff's pleadings.

### A

Plaintiff has made very clear that he believes Magistrate Judge Binder is biased against him, and as a result, has interfered with his cases in an attempt to harass him.[1]  During the hearing on his objection, Plaintiff acknowledged that the source of this bias is interactions between himself and the magistrate judge during IRS cases over the past fifteen years.

But that is impossible.  Magistrate Judge Binder was appointed to his current position in October 1984.[2]  He has served dutifully since that time.  Plaintiff was born in 1972, so unless he was involved with IRS disputes before his twelfth birthday, he is simply mistaken.  More likely, Plaintiff is confusing the magistrate judge with Charles E. Binder of Binder&Binder, "America's Most Successful Social Security Disability Advocates."[3]  Magistrate Judge Binder of the Eastern District of Michigan, however, has never been involved with Plaintiff in any capacity aside from the current cases pending on this Court's docket.

Further, even if Plaintiff's allegations had merit, filing letters on the Court's docket is not the appropriate solution.  The Judicial Conference of the United States – Committee on Judicial Conduct and Disability is fully capable of handling this type of dispute.  The process is governed by the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351–64, and the *Rules for*

---

[1] Plaintiff has filed at least seven lawsuits in this Court within the past six months.
[2] http://www.mied.uscourts.gov/judges/guidelines/topic.cfm?topic_id=365
[3] http://www.binderandbinder.com/

*Judicial-Conduct and Judicial Disability Proceedings*, 248 F.R.D. 674 (2008). This Court has no authority over the matter.

Because Plaintiff's objections to Magistrate Judge Binder's involvement in his cases are inappropriate and frivolous — potentially even defamatory — they will in no way affect the cases currently on file in this Court. Magistrate Judge Binder will continue to act as the gatekeeper for *in forma pauperis* lawsuits filed pursuant to § 1915. If Plaintiff wishes to avoid this reality, he need only pay the necessary filing fees.

**B**

Now to Plaintiff's complaint. It spans three hand-written pages and bounces quickly between legal conclusions and angry retorts, sometimes within the same sentence. But nowhere is there a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint does not list any statute or authority for his right of action, instead relying on histrionic renditions of alleged harm. Because Plaintiff's complaint does not state a claim on which relief can be granted, it will be dismissed.

Magistrate Judge Binder correctly concluded that, based on the complaint alone (construed *very* broadly), Plaintiff's only claim against Defendant is for defamation. In Michigan, the elements for a cause of action for defamation are as follows: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). *Burden v. Elias Bros. Big Boy Restaurants*, 480 N.W.2d 326, 328 (Mich. Ct. App. 1991) (citing *Postill v. Booth Newspapers Inc.*, 325 N.W.2d 511 (Mich. Ct. App. 1982)).

As this is a state law cause of action, Plaintiff could only enter federal court pursuant to diversity jurisdiction. Although Plaintiff does not establish the point, he and Defendant are diverse.[4] What cannot be established based upon Plaintiff's complaint, or any of the materials he has submitted, is how the case eclipses the $75,000 requirement for diversity jurisdiction. Therefore, Plaintiff has not adequately pled a cause of action for defamation under diversity jurisdiction.

Instead, as emphasized during the December 13 hearing, Plaintiff believes his complaint is grounded in federal question jurisdiction. As an aside, Plaintiff is not permitted to amend his complaint in order to avoid dismissal pursuant to 28 U.S.C. § 1915(e)(2). *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999). Nevertheless, given the nature of this case, his belief that the claims are proper under the FCRA will be addressed.

The FCRA exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). To that end, § 1681s–2 is designed to prevent "furnishers of information" from spreading inaccurate consumer-credit information. Section 1681s–2 works in two phases. Initially, furnishers have a duty to provide a Credit Reporting Agency (CRA) with accurate information about their consumers. § 1681s–2(a). Later, a furnisher may be asked by a CRA to respond to disputes about the consumer information provided. If at some point a CRA discovers that either the "completeness or accuracy" of a consumer's information is in dispute — and provided that it does not determine the dispute to be "frivolous or irrelevant" — that CRA will then notify the original furnisher and provide it with "all relevant information regarding the dispute." § 1681i(a)(1)–(3). Upon receiving notice of a dispute from a CRA, a furnisher faces a number of

---

[4] Defendant is a division of the Reed Elsevier Group, PLC, registered in the United Kingdom. Defendant has its world headquarters in New York. Accordingly, it is not a citizen of Michigan, as Plaintiff is.

duties, beginning with conducting "an investigation with respect to the disputed information."  §
1681s–2(b)(1)(A).

Plaintiff does not allege that Defendant is a CRA, and plainly, it is not.  *See*, *e.g Carney
v. Experian Information Solutions, Inc.,* 57 F.Supp.2d 496, 500 (W.D.Tenn.1999) (citing 15
U.S.C. § 1681a(f)) (defining a "consumer reporting agency" as one that regularly engages in the
practice of "assembling or evaluating consumer credit" for the purpose of furnishing it to third
parties).  Instead, based on Plaintiff's statements in his objection and during the hearing, he
believes Defendant is a "furnisher of information."  Although the term "furnisher of information"
is not defined within the FCRA, courts have employed "common sense" to determine it
encompasses an entity "which transmits information concerning a particular debt owed by a
particular consumer to consumer reporting agencies."  *Holt v. Macy's Retail Holders, Inc.*, 1:08-
CV-01285, 2010 WL 280347, at *4 (W.D. Tenn. Jan. 21, 2010) (quoting *Carney*, 57 F. Supp. 2d
at 501).

The Sixth Circuit has concluded "that FCRA expressly creates a private right of action
against a furnisher who fails to satisfy one of five duties identified in § 1681s–2(b)."  *Boggio v.
USAA Fed. Sav. Bank*, 696 F.3d 611, 618 (6th Cir. 2012).  Specifically:

> A consumer who demonstrates that a furnisher was negligent in breaching one of
> these duties with respect to that consumer's disputed information is entitled to
> actual damages under § 1681o; moreover, if a consumer can establish that a
> furnisher willfully violated one of its duties, then under § 1681n the consumer
> may recover actual or statutory damages, as well as punitive damages. Costs and
> reasonable attorney's fees are also authorized under both §§ 1681n and 1681o.

*Id*.

But Defendant is not a "furnisher of information" as envisioned by the FCRA.  *See
Humphreys v. Equifax Info. Services, LLC*, 2:08-CV-492 TS, 2009 WL 3615072 (D. Utah Oct.
28, 2009) (dismissing FCRA complaint against Lexis Nexis because it failed to state a claim

upon which relief could be granted). And even if it were, Plaintiff's complaint does not sufficiently allege that Defendant was acting as a "furnisher of information" here. As noted, a "furnisher of information" is an entity which transmits information concerning a particular debt owed. Plaintiff never alleged — in his complaint, his objection, or during the December 13 hearing — that Defendant transmitted information concerning debts he owed. In fact, upon review of the information Plaintiff has provided, it is apparent that such information was not a part of his file with Defendant.

Defendant was not acting as a "furnisher of information" under the FCRA in its dealings with Plaintiff. It follows that he cannot state a claim against Defendant under the FCRA for disseminating false information. Because the Court would lack jurisdiction over any state-law defamation claims as well, Plaintiff's complaint will be dismissed.

One final note — Plaintiff's complaint will be dismissed with prejudice. The Sixth Circuit has interpreted § 1915(e)(2) to mandate "that a complaint filed by a prisoner proceeding *in forma pauperis* be dismissed with prejudice if it is frivolous or fails to state a claim." *Hix v. Tennessee Dept. of Corrections*, 196 F. App'x 350, 354 (6th Cir. 2006) (citing § 1915(e)(2)). Further, "[t]he language of § 1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners." *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). It follows that Plaintiff's complaint, although not filed by a prisoner, must be dismissed with prejudice because it fails to state a claim for relief.

**IV**

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation, ECF No. 10, is **ADOPTED**.

It is further **ORDERED** that Plaintiff's objection, ECF No. 13, is **OVERRULED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED** with prejudice.

Dated: December 27, 2012                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon Scott A. Merritt, at 2014 N. Saginaw Road #305, Midland, MI 48640 by first class U.S. mail on December 27, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS